ORIGINAL
FILED

JUN  5 2008

RICHARD W. WIEKING
DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

MHP

**BEN LOVEMAN** (SBN # 249970)
ATTORNEY AT LAW
Law Offices of Virender Kumar Goswami
870 Market St., Ste. 1028
San Francisco, California 94102
Tel: (415) 391-0228
Fax: (415) 288-0459

Attorney for Plaintiff
**BISHNU KUMARI GURUNG**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

CV 08    2817

**BISHNU KUMARI GURUNG**

    Plaintiff

v.

**ROBERT MUELLER III,** Director, Federal
Bureau of Investigation; **JONATHAN**
**SCHARFEN,** Acting Director, U.S.
Citizenship and Immigration Services
(USCIS); **MICHAEL CHERTOFF,**
Secretary, Department of Homeland Security;
**MICHAEL MUKASEY,** Attorney General,
Department of Justice; **TERRY RICE,** San
Francisco Field Office Director, USCIS;
**EMILIA BARDINI,** Director, Asylum Office,
San Francisco;

                Defendants.

Civil Action No.:

**COMPLAINT FOR WRIT OF MANDAMUS**

USCIS No.: A 96 160 789

IMMIGRATION CASE

1

**INTRODUCTION**

1.       This is an individual action for declaratory judgment, injunctive and mandamus relief, authorized under the Declaratory Judgment Act, 28 U.S.C. Section 1361, and the Administrative Procedure Act, et. seq.  This action is brought by Plaintiff to compel Defendants and those acting under them to take action on Plaintiff's Application for Asylum, Form I-589, as is required under the Immigration and Nationality Act (INA), 8 U.S.C. §1101, et. seq. and applicable regulations, so that Plaintiff may finally receive a determination regarding his status.

2.       Plaintiff is eligible to have his Application adjudicated.

3.       Plaintiff filed his Asylum Application with the San Francisco Asylum Office of the legacy United States Immigration and Naturalization Service (now known as the United States Citizenship and Immigration Services "USCIS").

4.       Defendants have a statutory obligation to adjudicate this Application for Asylum, Form I-589, but have failed or have unreasonably delayed to adjudicate the Application for Asylum.

5.       Plaintiff and lawyers on his behalf have repeatedly inquired and complained to the Defendants about the delays without any resolution.

**PARTIES**

6.       Plaintiff, Bishnu Kumari Gurung, applied for asylum on September 30, 2003.  His application for asylum is still currently pending at the Asylum Office in San Francisco.

7.       Defendant, Robert S. Mueller, is sued in his official capacity as the Director of the Federal Bureau of Investigation ("FBI").  He is responsible for conducting both criminal record checks and the National Name Check Program ("NNCP").  The NNCP disseminates information from the FBI's Central Records System in response to requests submitted by federal agencies, including USCIS.

8.       Defendant, Emilia Bardini, is sued in her official capacity as the Director of the Asylum Office in San Francisco.

9.       Defendant, Jonathan Scharfen, is sued in his official capacity as the Acting Director of USCIS, an agency within the Department of Homeland Security, which is charged by law with the duty of adjudicating I-589 Applications for Asylum.

10.       Defendant, Michael Chertoff, is sued in his official capacity as the Secretary of the Department of Homeland Security.  In this capacity he is responsible for the administration and

enforcement of the immigration laws pursuant to 8 U.S.C. § 1103(a), including the accurate, efficient, and secure processing of immigration benefits.

11.    Defendant, Michael Mukasey, is sued in his official capacity as the Attorney General of the United States of America. In this capacity he is charged with the administration and enforcement of the immigration law, including security checks required to obtain an immigration benefit such as asylum. 8 U.S.C. § 1103(a).

12.    Defendant, Terry Rice, is sued in his official capacity as the Field Office Director of the San Francisco USCIS District.

## JURISDICTION

13.    This court has jurisdiction over the present civil action pursuant to 28 U.S.C. § 1331 (Federal Question Jurisdiction) because Plaintiff's claim arises under United States law, and 28 U.S.C. § 1361, regarding an action to compel an officer of the United States to perform his duty. This action challenges only the defendants' procedural policies, practices, and interpretations of law, not the granting or denial of individual applications. Therefore, the jurisdictional limitations of INA §242, 8 U.S.C. §1252 are not applicable.

14.    The aid of the court is invoked under 28 U.S.C. § 2201 and § 2202, authorizing declaratory judgment.

15.    Costs and Attorney's fees will be sought pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412(d), et seq.

## VENUE

16.    28 U.S.C. § 1391(e) provides that in a civil action in which the defendant is an officer or employee of the United States or any agency thereof acting in his or her official capacity, or under color of legal authority or any agency of the United States, the action may be properly brought in any judicial district in which a defendant in the action resides or in any judicial district where a plaintiff resides where no real property is involved. Plaintiff, Bishnu Kumari Gurung, is a resident of the Northern District of California and Defendant Emilia Bardini, Director, Asylum Office, San Francisco, is also a resident of the Northern District.

3

## EXHAUSTION OF REMEDIES

17.    Plaintiff has exhausted her administrative remedies.  Plaintiff and her attorneys have made numerous inquiries concerning the status of her I-589 application for asylum to no avail. (See Exhibits).  Plaintiff has no other adequate remedy available for the harm she seeks to redress—the failure by Defendants to adjudicate her application for asylum in a timely manner.

## FACTUAL ALLEGATIONS

18.    Plaintiff is a citizen of Nepal.  Plaintiff's Alien Registration number is A 97-596-473. She filed an application for asylum in the United States on 09/30/2003.  (See Exhibit ("Ex") A).

19.  Plaintiff was interviewed by an Asylum Officer at the San Francisco Asylum Office on November 24, 2003.  Plaintiff proceeded *pro se* with this interview.

20.    Plaintiff made numerous inquiries to the USCIS and San Francisco Asylum Office.  She has been repeatedly told that her case is still pending.

21.    On July 11, 2005, and August 30, 2005, counsel for Plaintiff sent letters to Emilia Bardini, Director, San Francisco Asylum Office, regarding the status of Plaintiff's case. Plaintiff's counsel also sent letters on July 1, 2006, and May 23, 2007, clarifying the facts of Plaintiff's case to Joseph Langlois, Director, Asylum Division, U.S. Citizenship and Immigration Services ("USCIS"), and Ms. Bardini.  Plaintiff's counsel received two responses stating merely that the case was pending.  These responses were sent on September 8, 2005, and December 12, 2005.  (See Ex. B).

22.    Also, Plaintiff's counsel sent a letter via certified mail on June 3, 2007, to Ms. Bardini, regarding the status of Plaintiff's case.  Plaintiff has not received a response.  (See Ex. C).

23.    It has now been over four and one half years since Plaintiff filed her Form I-589, Application for Asylum.  Plaintiff has made numerous requests to determine the status of her application and the delay associated with its adjudication, but has yet to receive a reasonable response or explanation from any governmental agency to account for such a long delay.

## CLAIMS

24.    Defendants have willfully and unreasonably delayed in, and have refused to, adjudicate Plaintiff's Application for Asylum, Form I-589, thereby depriving Plaintiff of the benefits of becoming an asylee, or at least of having her application adjudicated under the law.  By refusing

4

to adjudicate Plaintiff's application, Defendants have deprived Plaintiff of the opportunity to become a naturalized citizen of the United States and have deprived Plaintiff of the right to have her daughter join her in the United States. Defendants have also deprived Plaintiff of the peace of mind to which she is entitled under the Immigration and Nationality Act.

25.    Plaintiff has a clear right under the INA to have her I-589 application for asylum adjudicated in a reasonable period of time by the Defendants. Specifically, INA § 208 (d)(5) (A)(iii) provides that, "in the absence of exceptional circumstances, final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed." Plaintiff filed her application for asylum in September 2003. The 180 day period mandated by the statute passed four years ago, and the Defendants have not indicated any exceptional circumstances in Plaintiff's case to warrant such delay. Even if an exceptional circumstance existed in Plaintiff's case, four and one half years is so far beyond the time period contemplated by the statute that it would still be unreasonable. Plaintiff has been deprived of this clear right by the Defendants.

26.    Defendants have a clear duty under the Immigration and Nationality Act ("INA") Section 208 to adjudicate applications for asylum in a reasonably timely manner. Defendants have failed to perform their clear duty by refusing to adjudicate or unreasonably delaying the adjudication of Plaintiff's asylum application. The court may order the government defendants to adjudicate an application or petition where defendants have failed to take any action. *See, e.g.,* Iddir v. INS, 301 F.3d 492, 500 (7th Cir. 2002) (court held that government defendants owed a duty to adjudicate applications under the diversity lottery program); Patel v. Reno, 134 F.3d 929, 933 (9th Cir. 1997) (court held that government defendants owed a duty to adjudicate visa applications); Ibrahim v. Chertoff, 2007 U.S. Dist. LEXIS 38352 (9th Cir. 2007) (court held that government defendants have a mandatory duty to act on plaintiff's change of status application).

27.    Defendants owe a duty to adjudicate Plaintiff's application for asylum in a timely manner under the Administrative Procedures Act. Under 5 U.S.C. §555(b), any agency charged with processing plaintiff's asylum application, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time . . . shall proceed to conclude a matter presented to it." Plaintiff's application has been pending for over four and one half years without conclusion, far exceeding what is considered a reasonable time.

**U.S. Department of Justice**
Immigration and Naturalization Service

# Notice of Entry of Appearance
# as Attorney or Representative

**Appearances** - An appearance shall be filed on this form by the attorney or representative appearing in each case. Thereafter, substitution may be permitted upon the written withdrawal of the attorney or representative of record or upon notification of the new attorney or representative. When an appearance is made by a person acting in a representative capacity, his personal appearance or signature shall constitute a representation that under the provisions of this chapter he is authorized and qualified to represent. Further proof of authority to act in a representative capacity may be required. **Availability of Records** - During the time a case is pending, and except as otherwise provided in 8 CFR 103.2(b), a party to a proceeding or his attorney or representative shall be permitted to examine the record of proceeding in a Service office. He may, in conformity with 8 CFR 103.10, obtain copies of Service records or information therefrom and copies of documents or transcripts of evidence furnished by him. Upon request, he/she may, in addition, be loaned a copy of the testimony and exhibits contained in the record of proceeding upon giving his/her receipt for such copies and pledging that it will be surrendered upon final disposition of the case or upon demand. If extra copies of exhibits do not exist, they shall not be furnished free on loan; however, they shall be made available for copying or purchase of copies as provided in 8 CFR 103.10.

| | |
|---|---|
| In re: Bishnu Kumari Gurung | Date: 4/7/08 |
| On behalf of : Bishnu Kumari Gurung | File No. A# 97 596 473 |

I hereby enter my appearance as attorney for (or representative of), and at the request of the following named person(s):

| Name: Bishnu Kumari Gurung | | [ ] Petitioner    [x] Applicant |
| | | [ ] Beneficiary |

| Address: (Apt. No.) | (Number & Street) | (City) Richmond | (State) CA | (Zip Code) |

| Name: | | [ ] Petitioner    [ ] Applicant |
| | | [ ] Beneficiary |

| Address: (Apt. No.) | (Number & Street) | (City) | (State) | (Zip Code) |

*Check Applicable Item(s) below:*

[x] 1. I am an attorney and a member in good standing of the bar of the Supreme Court of the United States or of the highest court of the following State, territory, insular possession, or District of Columbia
CA _____ California Supreme Court _____ and am not under a court or administrative agency
Name of Court
order suspending, enjoining, restraining, disbarring, or otherwise restricting me in practicing law.

[ ] 2. I am an accredited representative of the following named religious, charitable, social service, or similar organization established in the United States and which is so recognized by the Board:

[ ] 3. I am associated with
the attorney of record previously filed a notice of appearance in this case and my appearance is at his request. (*If you check this item, also check item 1 or 2 whichever is appropriate.*)

[ ] 4. Others (Explain Fully.)

| SIGNATURE | COMPLETE ADDRESS |
|---|---|
| *(signature)* | Law Offices of Virender Kumar Goswami |
| | 870 Market Street, Suite 1028  San Francisco CA 94102 USA |
| NAME (Type or Print) | TELEPHONE NUMBER |
| Ben Loveman, Esq. | 415-391-0228                Fax Number : 415-288-0459 |

*PURSUANT TO THE PRIVACY ACT OF 1974, I HEREBY CONSENT TO THE DISCLOSURE TO THE FOLLOWING NAMED ATTORNEY OR REPRESENTATIVE OF ANY RECORD PERTAINING TO ME WHICH APPEARS IN ANY IMMIGRATION AND NATURALIZATION SERVICE SYSTEM OF RECORDS:*

Ben Loveman, Esq.

_____
(Name of Attorney or Representative)

*THE ABOVE CONSENT TO DISCLOSURE IS IN CONNECTION WITH THE FOLLOWING MATTER:*
All Immigration Matters

| Name of Person Consenting | Signature of Person Consenting | Date |
|---|---|---|
| Bishnu Kumari Gurung | *(signature)* | 4/7/08 |

(NOTE: Execution of this box is required under the Privacy Act of 1974 where the person being represented is a citizen of the United States or an alien lawfully admitted for permanent residence.)

This form may not be used to request records under the Freedom of Information Act or the Privacy Act. The manner of requesting such records is contained in 8CFR 103.10 and 103.20 Et.SEQ.

Form G-28 (09/26/00)Y

**Exhibit A**

OMB No. 1115-0086

**PART D.   YOUR SIGNATURE**

*After reading the information regarding penalties in the instructions, complete and sign below. If someone helped you prep─── ─── application, he or she must complete Part E.*

I certify, under penalty of perjury under the laws of the United States of America, that this application and the evidence submitted with it are all true and correct. Title 18, United States Code, Section 1546, provides in part: "Whoever knowingly makes under oath, or as permitted under penalty of perjury under Section 1746 of Title 28, United States Code, knowingly subscribes as true, any false statement with respect to a material fact in any application, affidavit, or knowingly presents any such application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly presents any such application, affidavit, or other document containing any such false statement or which fails to contain any reasonable basis in law or fact - shall be fined in accordance with this title or imprisoned not more than five years, or both." I authorize the release of any information from my record which the Immigration and Naturalization Service needs to determine eligibility for the benefit I am seeking.

**WARNING:** Applicants who are in the United States illegally are subject to removal if their asylum or withholding claims are not granted by an Asylum Officer or an Immigration Judge. Any information provided in completing this application may be used as a basis for the institution of, or as evidence in, removal proceedings even if the application is later withdrawn. Applicants determined to have knowingly made a frivolous application for asylum will be permanently ineligible for any benefits under the Immigration and Nationality Act. See 208(d)(6) of the Act and 8 CFR 208.20.

| Print Complete Name  BISHNU KUMARI GURUNG | Write your name in your native alphabet  बिश्नु कुमारी गुरुङ, |
|---|---|

Did your spouse, parent, or child(ren) assist you in completing this application?   ☒ No  ☐ Yes *(If "Yes," list the name and relationship.)*

_____     _____
(Name)                              (Relationship)

Did someone other than your spouse, parent, or child(ren) prepare this application?   ☒ No  ☐ Yes *(If "Yes," complete Part E)*

_____     _____
(Name)                              (Relationship)

Asylum applicants may be represented by counsel. Have you been provided with a list of persons who may be available to assist you, at little or no cost, with your asylum claim?   ☐ No   ☐ Yes

Signature of Applicant *(The person in Part A. I.)*

[        B. Kun̄                        ]          09-30-2003
Sign your name so it all appears within the brackets          Date *(Mo/Day/Yr)*

**PART E.   DECLARATION OF PERSON PREPARING FORM IF OTHER THAN APPLICANT, SPOUSE, PARENT OR CHILD**

I declare that I have prepared this application at the request of the person named in Part D, that the responses provided are based on all information of which I have knowledge, or which was provided to me by the applicant and that the completed application was read to the applicant in his or her native language or a language he or she understands for verification before he or she signed the application in my presence. I am aware that the knowing placement of false information on the Form I-589 may also subject me to civil penalties under 8 U.S.C. 1324(c).

| Signature of Preparer | Print Complete Name |
|---|---|
| Daytime Telephone Number (     ) | Address of Preparer: Street Number and Name |

| Apt. No. | City | State | ZIP Code |
|---|---|---|---|

**PART F.   TO BE COMPLETED AT INTERVIEW OR HEARING**

You will be asked to complete this Part when you appear before an Asylum Officer of the Immigration and Naturalization Service (INS), or an Immigration Judge of the Executive Office for Immigration Review (EOIR) for examination.

I swear (affirm) that I know the contents of this application that I am signing, including the attached documents and supplements, that they are all true to the best of my knowledge taking into account correction(s) numbered _____ to _____ that were made by me or at my request.

Signed and sworn to before me by the above named applicant on:

_____          _____
Signature of Applicant                         Date *(Mo/Day/Yr)*

_____          _____
Write Your Name in Your Native Alphabet          Signature of Asylum Officer or Immigration Judge



U.S. Department of Homeland Security
Citizenship & Immigration Services
San Francisco Asylum Office
P.O. Box 77530
San Francisco, CA 94107

---

Emilia Bardini, Director

September 8, 2005

Linda G. Ackerman
Attorney at Law
P.O. Box 210376
San Francico, CA 94121

Re: Bishnu Gurung A97 596 473

The status of your case is checked below:

[ ]     No interview has been scheduled as of the date of this review. You will be notified by mail three (3) weeks prior to the scheduled Interview date.

[ ]     Your application is pending in this office. You will be notified by mail of any decisions relating to your case. You need to notify this Office of any change of address to prevent delays in receiving further notifications regarding your case.

[ ]     Your asylum application is pending in this office. It is not possible to project with any certainty when you will be scheduled for an interview. Your name will be placed on our interview list for consideration for the next circuit trip.

[ ]     Your asylum application was approved on._____. Notice of this action was mailed to your last known address: _____. This office has completed all action on your case and your file has been forwarded to the National Record Center. If the U.S Postal Service returned your approval notice, it was placed in the file, and your local Citizenship and Immigration Service office can assist you in obtaining your approval notice. If your approval notice was not returned to this office, you must file a Form G-639 (FOIA request) to obtain a copy of the notice and Form I-102 to obtain a new I-94 card. Both forms (G-639 and I-102) can be filed with your local office.

[ ]     We are awaiting the results of a confidential background criminal check. You will be notified as soon as this investigation is complete. You may be contacted to submit another set of fingerprints for this investigation.

[ ]     The San Francisco Asylum Office handles interview and inquiries related to Asylum and NACARA applications pending within the jurisdiction of the San Francisco Asylum Office. Your inquiry regarding_____ needs to be directed to the following office: _____.

[ ]     This office has completed all processing on your case. Your asylum case was denied on _____,and you were restored to the status you were maintaining at that time, which was _____. If you are no longer maintaining that status and would like to be placed in Removal proceeding, please submit a written request to the office of Immigration Customs and Enforcement Investigation Unit that has jurisdiction over your place of residence. Your request should include your file number, the status that you were previously maintaining, the date that you were out of status, evidence of that expiration and your current address.

[ ]     There is no record of you being the authorized representative for this case. To protect the confidentiality of the applicant, you must submit a duly executed Form G-28, (signed by you and the applicant), with your inquiry so we may respond.

[ ]     Your inquiry did not contain sufficient information to be processed. Please resubmit your inquiry with your complete name, date of birth, country of birth, and/or Alien Registration Number.

[ ]     Your change of address has been updated.

[ ]    Your request for asylum was referred to the Immigration Judge. This office no longer has jurisdiction over your asylum case. Your case has been forwarded to the Office of District Counsel. Any further inquiries should be directed to that Office. The address is as follows:

[ ]    Your case was administratively closed due to an invalid address (mail sent to your address was returned undeliverable). If you would like to have your case re-opened, please submit a written request to the attention of Michelle Henderson. Your request should include you're file number and your current address.

___[ ]    Your asylum case was closed for failure to appear for a scheduled interview on _____. Notice of this interview was mailed to the address you provided the Service.

[ ]    Our records show you may be eligible to apply for benefits under The Nicaraguan Adjustment and Central American Relief Act (NACARA). This means you will not be scheduled for an asylum interview or receive a decision on your asylum application, if you have already been interviewed, until you have the opportunity to apply for NACARA benefits. If you prefer, you may ask to have your asylum interview scheduled as soon as possible. But if you choose this option, you will not be able to apply for NACARA benefits with the United States Citizenship and Immigration Services UUSCIS). Please see the attached fact sheet, which has more information about NACARA.

[ ]    Your Form I-881, application under section 203 of the Nicaraguan Adjustment and Central American Relief Act (NACARA) is pending in this office. **Priority is given to applicants whose qualified family members turn 21 years old in the next six months, and those who have emergencies.** It is very important that you notify this office of any change in address, so that we may notify you of your interview date. If you have received an Acknowledgement of Receipt of your NACARA application, but have not received a fingerprint appointment notice, please note all fingerprint scheduling was suspended in July 2000. This is because the Asylum Program does not have the resources to interview all NACARA applicants within 15 months from the date of filing a NACARA application and fingerprint clearances expire after 15 months. If you have not been scheduled for a fingerprint appointment, the USCIS will send you a notice to be fingerprinted prior to scheduling you for an interview.

If the USCIS received the results of your fingerprint check more than 15 months before your scheduled interview, you will be rescheduled for fingerprinting at no cost to you.

[ ]    You have sent your application to the wrong address. The San Francisco Asylum Office does not accept initial filings for asylum. Please refer to the instructions you received with your I-589 application, and send your application to the appropriate Service Center. If you are in proceedings in Immigration Court, you are required to file your application with the Immigration Court having jurisdiction over your case.

[ ]    Our records show you belong to a special class of asylum applicant whose claim for asylum is based on Coercive Family Planning, Under Section 207 (a) (5) of the Immigration and Nationality Act, no more than 1,000 individuals per fiscal year may be granted asylum based on resistance to a coercive population control (CFP) program. In order to ensure compliance with the 1,000 cap, individuals who establish asylum eligibility based on CFP are issued conditional grants of asylum and placed on a waiting list or final approval. The number of individuals establishing asylum eligibility based in CFP has exceeded 1,000 every year since fiscal year 1998. Individuals issued conditional grants can expect to wait several years after the conditional grant date for a final approval. On _____ you were issued a conditional grant of asylum based on CPC and placed on the waiting list for a final approval.

[ ]    You previously had two files with the Citizenship and Immigration Services, _____, and _____. We have consolidated them into one file. The surviving file number is: _____ Please use this number when referencing any Immigration information.

[ X]    Other: **The applicants' asylum application is pending review with our security office. When a decision is reached you will be promptly notified.**

If you have any questions, please contact our office at the address listed above to the attention of Michelle Henderson. Always notify this office of any address changes. Include your file number in any correspondence sent to this office.

**Exhibit B**

Linda G. Ackerman
Attorney at Law
542 28th Avenue
San Francisco, CA 94121
415/215-9351    wdebrie@earthlink.net

July 11, 2005

Emilia Bardini, Director
San Francisco Asylum Office
P.O. Box 77530
San Francisco 94107

**Re: Bishnu GURUNG**
      **A97 596 473**

Dear Emilia,

I'm writing to inquire about the status of Bishnu Gurung's asylum application. She is a Nepalese citizen who applied for asylum in September 2003 and has not yet received a decision or any other notice from the asylum office. Will you please let me know what the status of her case is? I'll also send an email inquiry in the hope of getting a quicker response.

With best regards,

Linda Ackerman

Attachment: Form G-28

Linda G. Ackerman
Attorney at Law
P.O. Box 210376
San Francisco, CA 94121
415/215-9351    wdebrie@earthlink.net

August 30, 2005

Emilia Bardini, Director
San Francisco Asylum Office
P.O. Box 77530
San Francisco 94107

**Re: Bishnu GURUNG**
      **A97 596 473**

Dear Emilia,

Having not yet received a response to my July 11, 2005, inquiry about the status of
Bishnu Gurung's asylum application, I am writing again with the same question. Bishnu
Gurung is a Nepalese citizen who applied for asylum at the San Francisco office in
September 2003. To date, she has not received a decision or any other notice from the
asylum office. For her own information and in order that I might advise her how to
proceed, will you please let me know what the status of her case is?

I included a G-28 form with my previous letter.

With best regards,

Linda Ackerman



U.S. Department of Homeland Security

Citizenship & Immigration Services
San Francisco Asylum Office
P.O. Box 77530
San Francisco, CA 94107

---

**Emilia Bardini, Director**

September 8, 2005

Linda G. Ackerman
Attorney at Law
P.O. Box 210376
San Francico, CA  94121

Re:  Bishnu Gurung  A97 596 473

The status of your case is checked below:

[ ]     No interview has been scheduled as of the date of this review.  You will be notified by mail three (3) weeks prior to the scheduled Interview date.

[ ]     Your application is pending in this office.  You will be notified by mail of any decisions relating to your case.  You need to notify this Office of any change of address to prevent delays in receiving further notifications regarding your case.

[ ]     Your asylum application is pending in this office. It is not possible to project with any certainty when you will be scheduled for an interview.  Your name will be placed on our interview list for consideration for the next circuit trip.

[ ]     Your asylum application was approved on._____.  Notice of this action was mailed to your last known address: _____. This office has completed all action on your case and your file has been forwarded to the National Record Center. If the U.S Postal Service returned your approval notice, it was placed in the file, and your local Citizenship and Immigration Service office can assist you in obtaining your approval notice.  If your approval notice was not returned to this office, you must file a Form G-639 (FOIA request) to obtain a copy of the notice and Form I-102 to obtain a new I-94 card.  Both forms (G-639 and I-102) can be filed with your local office.

[ ]     We are awaiting the results of a confidential background criminal check.  You will be notified as soon as this investigation is complete. You may be contacted to submit another set of fingerprints for this investigation.

[ ]     The San Francisco Asylum Office handles interview and inquiries related to Asylum and NACARA applications pending within the jurisdiction of the San Francisco Asylum Office.  Your inquiry regarding_____ needs to be directed to the following office:  _____.

[ ]     This office has completed all processing on your case. Your asylum case was denied on _____,and you were restored to the status you were maintaining at that time, which was _____.  If you are no longer maintaining that status and would like to be placed in Removal proceeding, please submit a written request to the office of Immigration Customs and Enforcement Investigation Unit that has jurisdiction over your place of residence.  Your request should include your file number, the status that you were previously maintaining, the date that you were out of status, evidence of that expiration and your current address.

[ ]     There is no record of you being the authorized representative for this case.  To protect the confidentiality of the applicant, you must submit a duly executed Form G-28, (signed by you and the applicant), with your inquiry so we may respond.

[ ]     Your inquiry did not contain sufficient information to be processed.  Please resubmit your inquiry with your complete name, date of birth, country of birth, and/or Alien Registration Number.

[ ]     Your change of address has been updated.

[ ]    Your request for asylum was referred to the Immigration Judge. This office no longer has jurisdiction over your asylum case. Your case has been forwarded to the Office of District Counsel. Any further inquiries should be directed to that Office. The address is as follows:

[ ]    Your case was administratively closed due to an invalid address (mail sent to your address was returned undeliverable). If you would like to have your case re-opened, please submit a written request to the attention of Michelle Henderson. Your request should include you're file number and your current address.

____ [ ]    Your asylum case was closed for failure to appear for a scheduled interview on _____. Notice of this interview was mailed to the address you provided the Service.

[ ]    Our records show you may be eligible to apply for benefits under The Nicaraguan Adjustment and Central American Relief Act (NACARA). This means you will not be scheduled for an asylum interview or receive a decision on your asylum application, if you have already been interviewed, until you have the opportunity to apply for NACARA benefits. If you prefer, you may ask to have your asylum interview scheduled as soon as possible. But if you choose this option, you will not be able to apply for NACARA benefits with the United States Citizenship and Immigration Services UUSCIS). Please see the attached fact sheet, which has more information about NACARA.

[ ]    Your Form I-881, application under section 203 of the Nicaraguan Adjustment and Central American Relief Act (NACARA) is pending in this office. **Priority is given to applicants whose qualified family members turn 21 years old in the next six months, and those who have emergencies.** It is very important that you notify this office of any change in address, so that we may notify you of your interview date. If you have received an Acknowledgement of Receipt of your NACARA application, but have not received a fingerprint appointment notice, please note all fingerprint scheduling was suspended in July 2000. This is because the Asylum Program does not have the resources to interview all NACARA applicants within 15 months from the date of filing a NACARA application and fingerprint clearances expire after 15 months. If you have not been scheduled for a fingerprint appointment, the USCIS will send you a notice to be fingerprinted prior to scheduling you for an interview.

If the USCIS received the results of your fingerprint check more than 15 months before your scheduled interview, you will be rescheduled for fingerprinting at no cost to you.

[ ]    You have sent your application to the wrong address. The San Francisco Asylum Office does not accept initial filings for asylum. Please refer to the instructions you received with your I-589 application, and send your application to the appropriate Service Center. If you are in proceedings in Immigration Court, you are required to file your application with the Immigration Court having jurisdiction over your case.

[ ]    Our records show you belong to a special class of asylum applicant whose claim for asylum is based on Coercive Family Planning, Under Section 207 (a) (5) of the Immigration and Nationality Act, no more than 1,000 individuals per fiscal year may be granted asylum based on resistance to a coercive population control (CFP) program. In order to ensure compliance with the 1,000 cap, individuals who establish asylum eligibility based on CFP are issued conditional grants of asylum and placed on a waiting list or final approval. The number of individuals establishing asylum eligibility based in CFP has exceeded 1,000 every year since fiscal year 1998. Individuals issued conditional grants can expect to wait several years after the conditional grant date for a final approval. On _____ you were issued a conditional grant of asylum based on CPC and placed on the waiting list for a final approval.

[ ]    You previously had two files with the Citizenship and Immigration Services, _____, and _____. We have consolidated them into one file. The surviving file number is: _____. Please use this number when referencing any Immigration information.

[ X]    Other: The applicants' asylum application is pending review with our security office. When a decision is reached you will be promptly notified.

If you have any questions, please contact our office at the address listed above to the attention of Michelle Henderson. Always notify this office of any address changes. Include your file number in any correspondence sent to this office.

Linda G. Ackerman
Attorney at Law
P.O. Box 210376
San Francisco, CA 94121
415/215-9351    wdebrie@earthlink.net

November 8, 2005

U.S. Department of Homeland Security
USCIS
P.O. Box 648010
Lee's Summit, Mo 64064-8010

Re: **Freedom of Information Act and Privacy Act Request for**
**BISHNU GURUNG**
**A 97 596 473**

To Whom It May Concern::

This request is made under the Freedom of Information Act and the Privacy Act, 5 U.S.C. Sec. 552. I request that a copy of all documents in the file of or related to **BISHNU GURUNG** be provided to me. I specifically request all documents generated by the San Francisco Asylum Office that may be part of this file, including any document headed "Assessment to Refer" or any other letter or document concerning the San Francisco Asylum Office's assessment or disposition of this case.

To help determine my status to assess fees, you should know that I am an individual seeking information only for personal use and not for a commercial use. Specifically, I am the attorney for **BISHNU GURUNG** (G-28 attached). I ask that all fees for fulfilling this request be waived.

I understand that I am entitled to make this request under the Freedom of Information Act and the Privacy Act, and if your agency response is not satisfactory, I am prepared to make an administrative appeal. In your reply to this request please indicate the name of the official to whom such an appeal should be addressed.

I am aware that if my request is denied I am entitled to know the grounds for this denial.

I am aware that while the law allows your agency to withhold specified categories of exempted information, you are required by law to release any segregable portions that are left after the exempted material has been deleted from the data I am seeking.

I greatly appreciate your efforts in fulfilling this request.

Sincerely,

Linda G. Ackerman
Attorney at Law

Enclosures: Form G-28

U.S. Department of Homeland Security
P.O. Box 648010
Lee's Summit, MO 64064-8010



**U.S. Citizenship
and Immigration
Services**

December 12, 2005                                    NRC2005119911

Linda G. Ackerman
Attorney at Law
P. O. Box 210376
San Francisco, CA 94121

Dear Linda G. Ackerman:

We received your request for information relating to your client, Bishnu Gurung, on December 12, 2005.

Your request is being handled under the provisions of the Freedom of Information Act
(5 U.S.C. 552). It has been assigned the following control number: NRC2005119911. Please cite this
number in any further inquiry about this request.

In accordance with Department of Homeland Security Regulations (6 CFR 5.3(c)), your request is
deemed to constitute an agreement to pay any fees that may be chargeable up to $25.00. Fees may be
charged for searching for records sought at the respective clerical, professional, and/or managerial rates of
$4.00/$7.00/$10.25 per quarter hour, and for duplication of copies at the rate of $.10 per copy. The first
100 copies and two hours of search time are not charged, and the remaining combined charges for search
and duplication must exceed $14.00 before we will charge you any fees. Most requests do not require any
fees; however, if fees in excess of $25.00 are required, we will notify you beforehand.

Additionally, we respond to requests on a first-in, first-out basis and on a multi-track system. With this
system we consider each request according to the complexity and volume so that requesters with a simple
and quick response do not wait for extended periods of time while we review complex voluminous
requests. Because of the nature of your request we have placed your request on the simple track.

This office is now able to offer you the option of having your records copied to a Compact Disc (CD) for
use on your personal computer. This option is an alternative to paper copies. The CD is readable on all
computers, except Apple brand, through the use of Adobe Acrobat software. A version of Adobe Acrobat
will be included on the CD. Your records can be viewed on your computer screen and can be printed
onto paper. Only records 15 pages or more are eligible for CD printing. Attorneys automatically receive
CD's, unless they contact us to request paper copies. Once an attorney has requested paper copies, all
future responsive records will be provided via paper – there is no need to call again. For individuals (i.e.
non-attorneys) please call our office at (816) 350-5570 to order your record on CD. Once you request
your records on either CD or paper, all future records will be furnished in the format you have requested.

If you have any questions concerning your pending FOIA/PA request, please address them to this office, Attention: FOIA/PA Officer, or call us at (816) 350-5570, or fax any FOIA/PA related correspondence to (816) 350-5785. If you have questions concerning the status of a pending Application or Petition or any other type of immigration matter, you must contact your local District Office or call the National Customer Service Unit at 1-800-375-5283. The National Records Center cannot assist you concerning any pending Applications or Petitions or any other type of immigration matter.

Sincerely,

T. Diane Cejka
Director

Linda G. Ackerman
Attorney at Law
P.O. Box 210376
San Francisco, CA 94121
415/215-9351    wdebrie@earthlink.net

July 1, 2006

Joseph Langlois, Director
USCIS
Asylum Division HQ
425 Eye St. NW,
Washington, DC 20530

**Re: Bishnu Kumari GURUNG**
      **A 97 596 473**

Dear Mr. Langlois:

**Bishnu Kumari Gurung** is one of more than 500 asylum applicants whose case falls into the so-called "material support of terrorism" category. I write now to ask you to return her case to the San Francisco Asylum Office for reconsideration based on new evidence that refutes the classification of material support. That is, an affidavit from her former employee that it was he, not Mrs. Gurung, who gave money to Nepalese Maoists, and that he did so without her knowledge or consent. (See Attachment A to Bishnu Gurung's affidavit, the Affidavit of Sanjay Das)

To summarize her story, Bishnu Gurung is a Nepalese woman who owned a hotel in Pokhara, a lakeside resort town about 200 km west of Kathmandu (Hotel Shikar, see http://www.hotelnepal.com/hotel.php?name=Hotel+Shikhar). She was an active member of the Nepali Congress Party and had been a member since 1991, when political parties first became legal in Nepal. (See Attachment B, Nepali Congress Party membership card of Bishnu Kumari Gurung, with translation and translator's affidavit; and Attachment C, Receipt to Bishnu Gurung for donation to Nepali Congress Party, January 12, 2000, with translation and translator's affidavit; Mrs. Gurung has additional receipts for annual donations made from 2001 to 2005, as well as her husband's Congress Party membership card.)

When the party held its national convention in Pokhara in January 2001, she turned over the entire hotel to one of the district delegations. She provided meeting rooms, acted as a liaison with local party officials, and gave the delegates the use of her car and motorbike. (See Attachment D, Letter of appreciation to Bishnu Gurung for giving the use of her hotel to Congress Party convention delegates, with translation and translator's affidavit) She also personally met many top party leaders, including Girija Prasad Koirala, then president of the Nepali Congress Party and prime minister and currently prime minister of the recently restored parliamentary government; in addition she met past prime minister Sher Bahadur Deuba.

While the convention was in progress, Maoists came to Bishnu's hotel. They ordered her to evict all the delegates within 12 hours and threatened to harm her and her family if she did not. She reported the incident to the police. She did not evict the delegates. The Maoists delayed following up on their threat until August 2001. At that time, 10-12 men who identified themselves as Maoists came to the hotel, demanded payment of the enormous sum of NRS 500,000 (about $6,800). When Bishnu refused, she and her husband were beaten so badly that neighbors who found them after the Maoists left took them to the hospital for treatment.

After this incident, the couple and their children fled Pokhara for the relative safety of Kathmandu, where they stayed with a friend from the travel business, Mr. Bhim Tamang. Unfortunately, the Maoists learned where they were staying and they began getting phone calls demanding money and threatening them with harm if they did not pay. They moved into a hotel near an army barracks, thinking that perhaps proximity might offer vicarious protection, but the Maoists telephoned them there. (See Attachment 5, Statement of Bhim Tamang) They decided to come to the U.S. to apply for asylum and on their second attempt, succeeded in entering the country.

The point of this narrative is that neither Bishnu Gurung nor her husband ever gave money or provided any form of material support to Maoists. The hotel manager, Mr. Sanjay Das, gave money to Maoists who demanded it as a form of protection, but he did so without the knowledge or participation of Bishnu Gurung or her husband. Bishnu did not learn that her manager had been paying the Maoists regularly until she was going over the hotel books in late 2000 and noticed payments made for non-specific "donations." When she asked Mr. Das what the donations were for, he told he had been giving money to the Maoists for over a year.

Upon learning of this, Bishnu became very angry and fired Mr. Das, giving him three months notice. She did not accept his explanation that the Maoists had threatened to harm her family, her business and himself if he did not pay them what they asked. He had not told her or her husband about the "donation" because he knew it was against their principals and their politics and they would not allow it.

Bishnu Gurung prepared her asylum application and declaration without assistance, including legal assistance. She went to her asylum interview alone and was interviewed in English. When I met her a year and a half after her interview, her command of English was poor, both in understanding questions and answering them. Although I do not speak Nepali, most of my clients are Nepalese and I am reasonably good at accommodating the lapses in their spoken English. I think Bishnu is able to understand me after several repetitions, but she still does not speak coherently, let alone fluently, or have much of a vocabulary, and I have difficulty understanding her.

Bishnu's answers in her asylum interview to questions about giving Maoists money, at least as they are reflected in the asylum officer's notes (received through a FOIA request), are confusing at best. When asked how many times Maoists came for donations, she said "many times," but followed that immediately with an answer that relates to the Maoist demand made directly to her and her husband in August 2001; i.e., to pay NRS 500,000 in two months or be killed. She says

that starting in 1999, the Maoists came every 3-4 months to collect a donation and that they kept raising the amount.

Later in her interview she describes the August 2001 incident more fully. She says a group of Maoists came to her hotel, took her and her husband outside, demanded a very large sum of money (the equivalent of either $6500 or $6800), and beat her and husband badly when she said they couldn't pay. This was a 10 or 11 months after Mr. Das had stopped paying the Maoists, and eight months after she refused their order to tell the Congress Party convention delegates to leave her hotel, which may account for the outrageous demand and the violent response to Bishnu's statement that she couldn't pay them.

In her attached affidavit, Bishnu Gurung states that in answering questions during her asylum interview, she only repeated what Mr. Das told her. If she had spoken better English and been able to comprehend the questions she was asked, rather than just a word here and there, she would have given clearer and correct answers. Any attorney would have insisted she take a translator, but she had no attorney to advise her. Speaking through a translator, she would also have understood the AO's questions and been able to tell the story of what actually happened. Because her comprehension and ability to communicate were very poor, and because she was very nervous, however, she repeated what Sanjay Das had told her about paying the Maoists as if it were her own story.

In fact, Bishnu was adamantly against the Maoists and would never have given them money or any other form of support. Her refusal to obey their demand to eject the Nepali Congress convention delegates from her hotel attests to her strong convictions. It took real courage on her part to say "no" to Maoists, since she knew very well how violent they are in general, and especially toward those who disobey them.

Bishnu Gurung did not give money to Nepalese Maoists or assist them in any way. On the contrary, she refused their demands to evict Congress Party delegates and to pay them an enormous sum of money. For her refusal, she and her husband were brutally beaten. The were forced to abandon their business and flee their home from fear of further persecution by Maoists.

I strongly urge you to take into account the evidence of Mr. Sanjay Das's evidence that it was he who gave money to Maoists, in order to protect Bishnu and her family and their business. I request the Bishnu Gurung's case be returned to the San Francisco Asylum Office for reconsideration and a new interview.

Respectfully submitted,

Linda G. Ackerman

cc: Emilia Bardini, Director
    San Francisco Asylum Office

Attachments

Linda G. Ackerman
Attorney at Law
P.O. Box 210376
San Francisco, CA 94121
415/215-9351    wdebrie@earthlink.net

May 23, 2007

Joseph Langlois, Director
Asylum Division HQ
425 Eye St. NW,
Washington, DC 20530

**Re: Bishnu GURUNG**
**A97 596 473**
**Exercise of Authority under Sec. 212(d)(3)(B)(i) of the INA, dated 4/27/07**

Dear Mr. Langlois:

Based on the above-referenced directive issued by the Secretary of Homeland Security, I am writing to request that the Asylum Division immediately begin processing the asylum application of **Bishnu Gurung.** Ms. Gurung meets the directive's requirements a, c and d, for the Secretary to exercise discretionary authority in waiving the material support bar in his case. That is,

    a) she seeks a protection for which she is eligible, apart from the bar imposed by
       INA §212(a)(3)(B)(iv)(VI);
    c) in her asylum declaration and in testimony during her asylum interview, she
       incorrectly stated that she had provided material support of terrorism under the
       statute; in a letter to the Asylum Division dated July 1, 2006, she provided evidence
       tending to prove that she did NOT contribute material support to terrorists; and
    d) she poses no danger whatsoever to the safety of the United States.

As to requirement b), I do not know if a background check has been completed in her case. .

**Background to This Request**
Bishnu Gurung was interviewed at the San Francisco Asylum Office on November 24, 2003. She prepared her asylum application by herself and was unaccompanied by an attorney at her asylum interview. She was extremely nervous during her interview, which was conducted in English, despite the fact that, in my opinion, her English comprehension and ability to speak the language are poor. I first met Ms. Gurung in May 2005, when she was looking for help in finding out why her asylum case had been pending for a year and a half.

Ms. Gurung and her husband owned a hotel in Pokhara, a resort town in Nepal. Both were members and strong supporters of the Nepali Congress Party. When the party held its annual convention in Pokhara in January 2001, Ms. Gurung turned over her entire hotel to a district party delegation. She provided meeting rooms for the delegation, acted as a liaison with local

1

party officials and gave the delegates the use of her car and motorbike. During the convention, she personally met the party's top leaders, including past prime minister Sher Bahadur Deuba, and current prime minister Girija Prasad Koirala.

While the convention was in progress, Maoists came to Ms. Gurung's hotel and ordered her to evict the Congress Party delegates. They threatened harm to her and her family if she did not evict the delegates within 12 hours. She did not evict the delegates and she reported the incident to the local police. In August 2001, between 10 and 12 Maoists came to her hotel and demanded a payment equivalent to $6800. When Ms. Gurung refused to pay them, they beat her and her husband so badly that both were hospitalized and Ms. Gurung experienced dizziness for months afterwards.

Around October 2000, prior to the Nepali Congress Party convention, Ms. Gurung was going over the hotel's account books and saw notations for non-specific payments, entered by her manager. When she asked him what they were for, he told her that he had been paying protection money to the Maoists for over a year. Upon learning of this, Ms. Gurung fired her manager, Mr. Das, despite his explanation that he had made the payments because the Maoists threatened to harm her, her family and her business if he did not pay them.

At her asylum interview, Ms. Gurung told the asylum officer that Mr. Das had given the Maoists Rp. 60,000-70,000 (about $840-$980). She states that this amount is incorrect and that she answered as she did because she was nervous and confused. The actual amount Mr. Das paid the Maoists over the period of about a year was Rp. 6000-7000 (about $85-$100).

After several letters to the director of the San Francisco Asylum Office asking to have this case returned there and reopened based on new evidence, I wrote you a letter dated July 1, 2006. In it I asked again to have the case reopened. I included Bishnu Gurung's affidavit with her explanation of testifying at her asylum interview that she had given money to the Maoists: that is, she repeated what Mr. Das had told her HE had done in response to questions about giving money. It should be noted that the reason Ms. Gurung hired Mr. Das as a manager was that she did not speak English well enough to deal with foreign guests at her hotel.

In addition to Ms. Gurung's affidavit, the July 2006 letter contains Mr. Das's affidavit regarding his payments to Maoists. He states that he did it only because they threatened him personally and also threatened the owners (the Gurungs). He also states that he did not tell Ms. Gurung because he knew she would not agree. Other evidence attached to this letter includes a copy of Ms. Gurung's Congress Party membership card, with translation; a cash receipt for a donation to the local party office, with translation; a letter of appreciation for turning over her hotel to delegates during the national convention from the local Congress party chairman, with translation; and an affidavit from the Kathmandu travel agent the Gurungs took refuge with after they fled Pokhara, stating that Maoists pursued them in Kathmandu.

There has never been any acknowledgement or response to my July 2006 letter or to my request to reopen Bishnu Gurung's case based on new evidence that tends to disprove material support of terrorism.

**Bishnu Gurung Qualifies for a Waiver of the Material Support Bar to Asylum**
Bishnu Gurung is a victim of terrorist persecution, not a supporter of terrorism. She was
threatened and badly beaten by Maoists because of her open support for the Congress Party. She
was pursued by Maoists when she tried to escape them by moving from Pokhara to Kathmandu.
She is eligible for a waiver of the material support bar because she never contributed to the
support of terrorism. She is entitled to have her case reopened and reconsidered based on
evidence that she did not give money to Maoists and did not know that the manager of her hotel
was giving them money. Other evidence indicates that she stood up to the Maoists by not
evicting Congress Party delegates from her hotel as they demanded. She also reported them to
the police, an act that shows great conviction and courage on her part, since it was well known in
Nepal that informers were often killed by Maoists.

During the three and a half years her asylum application has been pending, Bishnu Gurung and
her husband have received work permits and have worked steadily. Ms. Gurung has done child
care for two San Francisco families, one for 2 ½ years, the other since January 2007 (affidavits
can be provided on request). Her husband worked at a San Francisco hotel for a year and now
drives a taxi for Yellow Cab.

It should be noted that the Gurungs' daughter, who was 16 years old when her parents left Nepal
to come to the U.S. to apply for asylum, has been living very precariously on her own in a
student hostel in Kathmandu during the time her mother's I-589 application has been pending.

**Maoist Violence and Extortion Continue in Nepal**
As the attached State Department Travel Warning (dated May 7, 2007) makes clear, Maoists
continue to operate in the same manner as they did during the 10-year civil war:

> Despite the signing of a comprehensive peace agreement by the Government and Maoist
> insurgents and their entry into an interim government, Maoists continue to engage in
> violence, extortion, and abductions. Maoists freely roam the countryside and cities,
> sometimes openly bearing their weapons. The Young Communist League, a subgroup of
> the Maoists, continues to extort and abuse people, including threatening Kathmandu-
> based personnel of a U.S. Non Governmental Organization.

With Maoist extortion and intimidation continuing, regardless of the statements of the Maoist
leadership, it is probable that the Gurung's safety would be at risk if they returned to Nepal

**Conclusion**
Bishnu Gurung has now waited three and a half for the U.S. government to process her asylum
application. She requests at this time that the government waive the material support bar on the
ground that she did not provide support of any kind to Nepalese Maoists, and grant her asylum as
expeditiously as possible.

Counsel would appreciate an acknowledgement and response to this request. In particular, it
would be helpful to have information regarding how the Asylum Division intends to go about
processing its considerable backlog of asylum material support cases. Please let us know if we
can provide additional documentation or testimony and we will do so as quickly as possible.

Yours truly,

Linda G. Ackerman

Attachments: Exercise of Authority under Sec. 212(d)(3)(B)(i) of the INA
            U.S. State Department Travel Warning for Nepal, dated May 8, 2007

cc: Emilia Bardini, Director
    San Francisco Asylum Office
    P.O. Box 77530
    San Francisco 94107

    Elizabeth Dallam, Protection Officer
    UNHCR
    1775 K St., NW
    Washington, DC 20006

**Exhibit C**



Emilia Bardini
Director, San Francisco Asylum Office
U.S. Department of Homeland Security
B.C.I.S.
P.O. Box 77530
San Francisco, CA 94107

Law Office of Virender Kumar Goswami
870 Market St., Ste. 1028
San Francisco, CA 94102

# LAW OFFICE OF
# VIRENDER KUMAR GOSWAMI

June 3, 2008

Emilia Bardini
Director, San Francisco Asylum Office
U.S. Department of Homeland Security
B.C.I.S.
P.O. Box 77530
San Francisco, CA 94107

RE: **Bishnu Kumari Gurung /A# 97-059-473**
*Status Request on Asylum Application; Notification of Intent to*
*File Civil Suit to Compel Adjudication*

Dear Ms. Bardini,

My name is Ben Loveman (SBN 249970), and I am an attorney with
the Law Office of Virender Kumar Goswami. Our office represents Bishnu
Kumari Gurung (A# 97-596-473). This letter is a request for information
regarding the status of an asylum application filed in September 2003, by
Mrs. Gurung.

Mrs. Gurung and lawyers on her behalf have made attempts to garner
information regarding the status of her case without any resolution. Such
attempts have included numerous written and telephone inquiries to the
Asylum Office.

Please respond with any information you have regarding the status of
Mrs. Gurung's case. Thank you for your assistance in this matter.

Sincerely,

Ben Loveman
Attorney at Law

870 MARKET STREET, SUITE 1028 • SAN FRANCISCO, CA • 94102
PHONE: (415) 391-0228
FAX: (415) 288-0459

# CERTIFICATE OF SERVICE

I, the undersigned, declare under penalty of perjury that the following is true and correct.
I am over the age of 18 years and am not a party to the action referenced in the foregoing letter.
My business address is 870 Market Street, Suite 1028, San Francisco, CA 94102. On June 4,
2008, I served copies of the foregoing documents in said action by certified mail upon:

Mr. Terry Rice
Director, USCIS San Francisco Field Office
444 Washington Street
San Francisco, CA 94111

Mr. Michael Mukasey
Attorney General of the United States
950 Pennsylvania Avenue NW
Washington, DC 20530-0001

Mr. Jonathan Scharfen
Acting Director, U.S. Customs and Immigration Services
20 Massachusetts Avenue NW
Washington, DC 20536

Mr. Michael Chertoff, Secretary
U.S. Department of Homeland Security
245 Murray Lane #410, SW
Washington, DC 20528-0300

Ms. Emilia Bardini
Director, San Francisco Asylum Office
75 Hawthorne Street #303
San Francisco, CA 94105

Robert Mueller III
Director, Federal Bureau of Investigation
J Edgar Hoover Building
935 Pennsylvania Ave, NW
Washington, DC 20535-0001

Joseph P. Russoniello, United States Attorney
Attn: Civil Service Clerk
450 Golden Gate Avenue, Box 36055
San Francisco, CA 94102

Executed on June 4, 2008 in San Francisco, California.

Ben Loveman, Esq.
Law Office of Virender Kumar Goswami
870 Market Street, Suite 1028